UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| Karen Hayes Phillip | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 1:20-CV-00540 |
| | ) | |
| MCGILL BAPTIST CHURCH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MCGILL BAPTIST CHURCH INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. NATURE OF THE MATTER BEFORE THE COURT

This case involves a dispute between Plaintiff Karen Hayes Phillip ("Plaintiff") and Defendant McGill Baptist Church, Inc. ("Defendant") arising from alleged unpaid compensation for Plaintiff's attendance at training classes. (D.E. 1 and 8). Plaintiff, a former teacher at Defendant's Child Development Center, contends Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95.25.1 et seq., by failing to pay wages due to Plaintiff for her attendance at training courses throughout the entirety of her employment. (D.E. 8). Plaintiff also alleges Defendant retaliatorily terminated her employment in violation of the FLSA, 29 U.S.C. § 215(a)(3), because she opposed working without pay and requested to be paid for the time she spent attending mandatory training programs. (*Id*. at ¶¶ 21-27, 37).

However, Plaintiff's allegation that Defendant retaliatorily terminated her employment fails on the face of Plaintiff's own allegations set forth in the First Amended Complaint[1]. (*Id*. at ¶¶ 15-27). Specifically, Plaintiff alleges Defendant only allowed her to work if she completed certain mandatory training courses, and Plaintiff alleges Defendant's Executive Director of its Child Development Center, Shannon Van Kaenel ("Ms. Von Kaenel"), informed Plaintiff she could not return to work until Plaintiff completed a particular mandatory training course <u>*before*</u> Plaintiff engaged in any form of protected activity under the FLSA. (*Id*.). Plaintiff did not viably assert her FLSA rights until <u>*after*</u> Ms. Von Kaenel made and communicated Defendant's decision that Plaintiff could not return to work until she complete a specific training course. (*Id*.). Therefore, Defendant lacked knowledge of Plaintiff's alleged engagement in protected activity when Defendant informed Plaintiff she could not return. (*Id*.); *see also, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (finding knowledge "absolutely necessary" to support causation).

Plaintiff simply cannot establish the mandatory causation element of the FLSA retaliation claim because Plaintiff's allegations demonstrate Defendant made the decision that effectively constituted a termination of Plaintiff's employment <u>*before*</u> Plaintiff engaged in alleged protected activity and nothing about the terms or conditions of Plaintiff's

---

[1] Plaintiff filed her First Amended Complaint in response to Defendant's prior Motion to Dismiss. (D.E. 5, 6, 7, and 8). Defendant's first Motion to Dismiss also sought dismissal of Plaintiff's FLSA retaliation claim. (D.E. 5, 6, and 7). However, Plaintiff's First Amended Complaint fails to rescue the claim and instead reaffirms and clarifies, through the Amended Complaint's own allegations, that Plaintiff cannot state a viable FLSA retaliation claim.

employment negatively changed *after* Plaintiff engaged in alleged protected activity. (D.E. 8 at ¶¶ 15-27); *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2007) (to establish a FLSA retaliation claim, Plaintiff must show: (1) she engaged in activity protected by the FLSA; (2) she suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action).

Plaintiff cannot establish a viable FLSA retaliation claim without establishing the existence of causation. Plaintiff conceded there is no causation by alleging that Defendant made its decision regarding Plaintiff's employment *before* Plaintiff engaged in any form of alleged protected activity, and this allegation is entitled to an assumption of truth. (D.E. 8 at ¶¶ 15-27); *see also Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts are instructed to accept as true all well-pleaded Complaint allegations). Consequently, the Court must dismiss the FLSA retaliation claim pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's First Amended Complaint, through its own allegations, fails to state a claim for retaliation upon which relief can be granted.

## II.  FACTUAL BACKGROUND

### 1. Procedural Posture

Plaintiff filed her Complaint on June 16, 2020, alleging claims for failure to pay wages under the FLSA and the NCWHA, and for retaliation in violation of the FLSA. (D.E. 1). Defendant was served with the Complaint on July 27, 2020, and timely filed a Rule 12(b)(6) Motion seeking dismissal of Plaintiff's FLSA retaliation claim. (D.E. 4-6).

Defendant's 12(b)(6) Motion challenged Plaintiff's FLSA retaliation claim, in part, on the same logical grounds raised in the instant Motion. (*Id*.). Plaintiff responded to Defendant's 12(b)(6) Motion by filing a First Amended Complaint on September 9, 2020. (D.E. 7-8). Defendant's Partial Motion to Dismiss the FLSA claim alleged in Plaintiff's First Amended Complaint is timely. (D.E. 9).

### 2. <u>Plaintiff's Allegations Set Forth in the First Amended Complaint</u>

Defendant employed Plaintiff as a teacher in Defendant's Child Development Center in Concord, North Carolina. (D.E. 8 at ¶ 16). Plaintiff alleges her employment with Defendant began June 26, 2019 and ended February 18, 2020. (*Id*.).

At the time her employment began, Plaintiff contends Defendant required her to obtain multiple childcare-related certifications as a <u>*condition*</u> of Plaintiff's employment. (*Id*. at ¶ 17). Plaintiff alleges she attended the courses to obtain the required certifications, but was not compensated for the time she spent attending the courses. (*Id*). Thus, Plaintiff clearly alleges Defendant required her to attend courses to obtain required certifications, without compensation for the time Plaintiff spent in attendance, as a condition of Plaintiff's employment when it began in June of 2019. (*Id*.).

After her employment began, Plaintiff claims she attended two mandatory training sessions, an "American Red Cross Cardiopulmonary Resuscitation (CPR)" course on August 1, 2019, and a "Sudden Infant Death Syndrome and Use of Safe Sleeping Practices" course on August 10, 2019. (*Id*. at ¶¶ 18-19). Plaintiff also asserts she attended additional unnamed mandatory training courses on unspecified dates. (*Id*. at ¶ 20). Plaintiff contends Defendant did not compensate her for attending the August 2019 training courses or any

subsequent courses. (*Id*. at ¶¶ 18-20). Thus, Plaintiff clearly alleges Defendant required her to attend mandatory training courses, without compensation for the time Plaintiff spent in attendance, as a continued condition of Plaintiff's employment throughout August of 2019 and subsequent months. (*Id*.).

On approximately February 17, 2020, Plaintiff claims she received a message from one of Defendant's administrative assistants who reminded Plaintiff that an online training module called "Recognizing and Responding to Suspicions of Maltreatment" had to be completed by February 18, 2020. (*Id*. at ¶ 21).

On February 18, 2020, Plaintiff claims she spoke with the administrative assistant about the training module, explained she did not complete the training at home, and offered to work through her lunch break to complete the training. (*Id*. at ¶ 22). Plaintiff alleges the administrative assistant represented that she would ask Ms. Von Kaenel if Plaintiff could participate in the training while off-the-clock at work. (*Id*.). Plaintiff contends the administrative assistant did not follow up with her, but Plaintiff proceeded to clock out and finish a portion of the online training during her lunch break. (*Id*.).

Plaintiff alleges that when she was at the time-clock, clocking back in from her lunch break, Ms. Von Kaenel approached and asked Plaintiff if she was aware that the deadline for Plaintiff completing the "Recognizing and Responding to Suspicions of Maltreatment" training module was past due. (*Id*. at ¶ 23). Plaintiff claims she explained she could not

complete the training outside of normal work hours, and she complained[2] that other employees were permitted to complete online training modules during work hours while Plaintiff was not given the same opportunity. (*Id*.). Ms. Von Kaenel then allegedly told Plaintiff she was not permitted to return to work until she completed the training module. (*Id*.). Thus, as of February 18, 2020, Plaintiff clearly alleges Defendant required her to attend mandatory training courses, without compensation for the time Plaintiff spent in attendance, as a continued condition of Plaintiff's employment. (*Id*. at ¶¶ 22-23). Further, Plaintiff clearly asserts Defendant informed her she was not permitted to return to work until she complete the training <u>*before*</u> Plaintiff engaged in any form of alleged protected activity under the FLSA. (*Id*.).

Later on February 18, 2020, <u>*after*</u> Ms. Von Kaenel already determined Plaintiff could not return to work until completing the training module, Plaintiff emailed Ms. Von Kaenel and objected to attendance at mandatory training courses without pay. (*Id*. at ¶ 24). In the email, Plaintiff allegedly: (1) asserted that the FLSA required Defendant to compensate her for the time she spent attending training programs because of their involuntary nature; (2) stated she would complete the remaining training programs Defendant required if Defendant would compensate her for attending the programs; and (3) notified Ms. Von Kaenel that she would not complete any additional training modules without pay, clarifying that she would complete the training modules during paid working time. (*Id*.).

---

[2] Plaintiff does not allege that she complained, with any degree of formality, certainty, or detail, that any aspect of Defendant's practices implicated Plaintiff's FLSA rights and Plaintiff does not allege that she asserted any of her FLSA rights during the lunch-time interaction with Ms. Von Kaenel. (D.E. 8 at ¶ 23).

Ms. Von Kaenel responded also by email, reiterating the decision she previously communicated to Plaintiff *before* Plaintiff's email, stating: "It doesn't work like that. Your training hours are not covered. Please let me know if you will be completing this training as it will need to be completed before returning to McGill." (*Id.*). Thus, in response to Plaintiff's alleged February 18, 2020 email, asserting for the first time that McGill's practices violated the FLSA, Plaintiff's allegations make it clear that Ms. Von Kaenel merely repeated the decision she communicated to Plaintiff *before* Plaintiff engaged in alleged protected activity. (*Id.*).

Plaintiff's allegations simply demonstrate that Defendant did not negatively change the terms or conditions of Plaintiff's employment associated with the mandatory nature of or payment for attendance at training courses *after* Plaintiff sent the February 18, 2020 email to Defendant's Executive Director. (*Id.* at ¶¶ 15-27). Rather, Plaintiff's allegations actually demonstrate that Defendant merely informed Plaintiff she needed to complete required training courses before returning and that Plaintiff would not be compensated for the training courses, which were the exact same terms and conditions associated with Plaintiff's employment when it began in late June of 2019 and throughout the months preceding the February 18, 2020 email exchange. (*Id.*).

Critically, Plaintiff's allegations also make it clear that Defendant communicated its decision – that Plaintiff could not return to work until she complete the required training – *before* Plaintiff sent the February 18, 2020 email to Ms. Von Kaenel. (*Id.* at ¶¶ 23-27). Given the plain allegations set forth in Plaintiff's First Amended Complaint, to the extent

4812-1533-4348.1                                      7

Case 1:20-cv-00540-WO-LPA   Document 10   Filed 09/22/20   Page 7 of 18

Plaintiff allegedly experienced an adverse employment action[3], Plaintiff cannot establish the causation element of her FLSA retaliation claim because she admits Defendant made its decision regarding her work status *before* she sent the February 18, 2020 email to Ms. Von Kaenel. (*Id*.).

Plaintiff's First Amended Complaint makes it clear that Plaintiff cannot establish the mandatory causation element of a FLSA retaliation claim because the pleading clearly alleges Defendant made its decision regarding Plaintiff's employment status *before* Plaintiff engaged in any alleged protected activity. (*Id*.). Plaintiff's FLSA retaliation claim consequently must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). As a simple matter of law, the absence of causation precludes Plaintiff from stating a viable FLSA retaliation claim upon which relief can be granted. *Id*.

### III. QUESTIONS PRESENTED

1. Should the Court dismiss Plaintiff's FLSA retaliation claim where Plaintiff's First Amended Complaint allegations make it clear Plaintiff cannot establish the mandatory causation element?

### IV. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." A 12(b)(6) motion tests the sufficiency of a

---

[3] Defendant does not waive its right to dispute whether or not Plaintiff actually suffered an adverse employment action as, for example, Plaintiff voluntarily elected not to return to work after Defendant offered a simple path to return that merely entailed Plaintiff completing the "Recognizing and Responding to Suspicions of Maltreatment" training module. *See, e.g., Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (a voluntary resignation is not an adverse employment action).

complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Courts are instructed to "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## V. ARGUMENT

The FLSA's retaliation provision renders it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3). To establish a *prima facie* FLSA retaliation claim, Plaintiff's First Amended Complaint allegations must sufficiently demonstrate that: (1) she engaged in an activity protected by the FLSA; (2) she suffered adverse action by Defendant subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between Plaintiff's engagement in protected activity and Defendant's adverse action. *Darveau*, 515 F.3d at 340 (internal citations omitted). However, Plaintiff fails to demonstrate the existence of a causal connection because she admits Defendant made its decision regarding her work status *before* she sent the February 18, 2020 email to Ms. Von Kaenel. (D.E. 8 at ¶¶ 15-27).

### 1. **Plaintiff Cannot Establish a Causal Connection Between the Alleged Adverse Employment and Her Alleged Engagement in Protected Activity**

Assuming *arguendo* Defendant's refusal to allow Plaintiff to work (which Plaintiff also refers to as a termination) constitutes an adverse job action, Plaintiff cannot establish a causal connection between her protected activity and any adverse job action. (D.E. 8 at ¶¶ 15-27). The allegations set forth in Plaintiff's First Amended Complaint simply make it clear that Defendant made its decision regarding Plaintiff's ability to work *before* Plaintiff alleged any form of legally protected activity under the FLSA. (*Id.* at ¶¶ 23-24).

More specifically, Plaintiff contends that when she was at the time-clock, clocking back in from her lunch break on February 18, 2020, Ms. Von Kaenel approached and asked Plaintiff if she was aware that the deadline for Plaintiff completing the "Recognizing and Responding to Suspicions of Maltreatment" training module was past due. (*Id.* at ¶ 23). Plaintiff claims she explained she could not complete the training outside of normal work hours, and she complained that other employees were permitted to complete online training modules during work hours while Plaintiff was not given the same opportunity. (*Id.*). Ms. Von Kaenel then allegedly told Plaintiff she was not permitted to return to work until she completed the training module. (*Id.*). Thus, as of February 18, 2020, Plaintiff clearly alleges Defendant required her to attend mandatory training courses, without compensation for the time Plaintiff spent in attendance, as a continued condition of Plaintiff's employment. (*Id.* at ¶¶ 22-23). Further, Plaintiff clearly asserts Defendant informed her she was not permitted to return to work until she completed the training, as of the end of lunch on February 18, 2020 and *before* Plaintiff engaged in any form of alleged protected activity under the FLSA. (*Id.*).

4812-1533-4348.1                                            10

Case 1:20-cv-00540-WO-LPA   Document 10   Filed 09/22/20   Page 10 of 18

Plaintiff's alleged lunch-time explanation and complaint to Ms. Von Kaenel that elicited Ms. Von Kaenel's articulation of Defendant's position regarding Plaintiff's work status, does not constitute protected activity under the FLSA. (*Id*. at ¶ 23). As a matter of law, "'some degree of formality' is required for an employee complaint to constitute protected activity, 'certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand that matter as part of its business concerns.'" *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428 (4th Cir. 2012) (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2010)). Therefore, the proper standard for the Court to apply is the test articulated in *Kasten*: whether Plaintiff's complaint to her employer was "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id*.

Here, Plaintiff's February 18, 2018 lunch-time explanation and complaint to Ms. Von Kaenel simply failed to express, in a clear and detailed manner, an assertion of Plaintiff's rights under the FLSA and a call for the protection of Plaintiff's FLSA rights. *Id*.; (D.E. 8 at ¶ 23). Rather, Plaintiff only asserted to Ms. Von Kaenel the general grievance that Plaintiff believed other employees completed online training during work hours while she was not given the same opportunity. (D.E. 8 at ¶ 23). Plaintiff's lunch-time complaint was completely informal and made absolutely no mention of any disparity in pay between herself and any co-worker. (*Id*.). Courts routinely find that even complaints offering much more detail, formality, and substance than the one Plaintiff made to Ms. Von Kaenel at the end of lunch on February 18, 2020, are insufficient to constitute protected activity under the FLSA.

*See, e.g., Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 840, 851 (D.N.J. 2019) (No protected activity where employee raised an employer's "lunch policy," requiring "all hourly employees to take an hour-long lunch." Plaintiff "made a number of statements regarding the Lunch policy including that (1) the policy was not federal law, (2) the policy did not work for reporters, and (3) the law required to be paid for all hours worked and employees should be paid for their lunch unless they perform no work at all."). Under prevailing legal standards, Plaintiff's lunch-time explanation and complaint to Ms. Von Kaenel clearly lacked the formality, detail, clarity, and specificity to reasonably put Ms. Von Kaenel on notice or enable Ms. Von Kaenel to understand that Plaintiff was somehow intending to assert her FLSA rights or calling for their protection. (D.E. 8 at ¶ 23). Plainly, Plaintiff's lunch-time explanation and complaint did not constitute an assertion of FLSA rights. (*Id.*).

However, later on February 18, 2020, *after* Ms. Von Kaenel already determined Plaintiff could not return to work until completing the training module and *after* Ms. Von Kaenel communicated her decision to Plaintiff, Plaintiff emailed Ms. Von Kaenel and objected to attendance at mandatory training courses without pay. (*Id.* at ¶ 24). Plaintiff's February 18, 2020 email to Ms. Von Kaenel was far more formal and direct than her earlier lunch-time explanation and complaint, and Plaintiff's February 18, 2020 email actually mentioned the FLSA whereas the earlier lunch-time explanation and complaint did not. (*Id.* at ¶¶ 23-24). Obviously, Plaintiff believed she needed to express an assertion of her rights to Ms. Kaenel in more clear, detailed, and formal manner *after* Ms. Von Kaenel notified Plaintiff she could not return to work until completing the online training module.

In the email, Plaintiff allegedly: (1) asserted that the FLSA required Defendant to compensate her for the time she spent attending training programs because of their involuntary nature; (2) stated she would complete the remaining training programs Defendant required if Defendant would compensate her for attending the programs; and (3) notified Ms. Von Kaenel that Plaintiff would not complete any additional training modules without pay, clarifying that she would complete the training modules during paid working time. (*Id*. at ¶ 24). Ms. Von Kaenel responded by email, reiterating the decision she previously communicated to Plaintiff *before* Plaintiff's email, stating: "It doesn't work like that. Your training hours are not covered. Please let me know if you will be completing this training as it will need to be completed before returning to McGill." (*Id*.). Thus, in response to Plaintiff's alleged February 18, 2020 email opposing McGill's practices as violating the FLSA, Plaintiff's allegations make it clear that Ms. Von Kaenel merely repeated the decision she communicated to Plaintiff *before* Plaintiff engaged in alleged protected activity. (*Id*.).

Plaintiff's own allegations simply demonstrate that nothing about the terms or conditions of her employment negatively changed *after* her February 18, 2020 email to Ms. Von Kaenel. (D.E. 8 at ¶¶ 15-27). Rather, the terms and conditions of Plaintiff's employment *after* her February 18, 2020 email remained the same terms and conditions that existed when Plaintiff's employment began on June 26, 2019, and as it continued while Plaintiff allegedly attended other training courses thereafter. (*Id*.). Further, Ms. Von Kaenel informed Plaintiff she was not allowed to return to work until she completed the online training module *before* Plaintiff's February 18, 2020 email, and Ms. Von Kaenel's position

did not change, and certainly did not become more severe or punitive, *after* Plaintiff's February 18, 2020 email. (*Id.* at ¶¶ 23-24).

Even if the Court somehow determines the February 18, 2020 email response Plaintiff received from Ms. Von Kaenel constitutes an adverse employment action, the decision to take the action expressed in Ms. Von Kaenel's email response was made and communicated to Plaintiff *before* Plaintiff engaged in alleged protected activity as clearly set forth in Plaintiff's First Amended Complaint. (*Id.* at ¶¶ 15-27). Similarly, Defendant's policy regarding the mandatory nature of and compensation for attendance at certain training courses applied to Plaintiff *after* her February 18, 2020 email in the exact same way it did *before* Plaintiff's February 18, 2020 email. (*Id.*).

Thus, Plaintiff's own allegations conclusively demonstrate that Plaintiff absolutely cannot establish the mandatory causation element of an FLSA retaliation claim, because the First Amended Complaint makes it abundantly clear that Defendant made and communicated the decision to take an alleged adverse employment action *before* Plaintiff ever engaged in activity that could feasibly enjoy legal protection under the FLSA. *See, e.g., Groth v. Nakasone*, 2019 U.S. Dist. LEXIS 121031, *35 (D. Md. 2019) ("Where an employer considers an adverse or disciplinary action before an employee engages in protected activity… temporal proximity between the protected activity and the action does not sufficed to establish causation.") (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

Further, as Defendant indisputably made its decision *before* Plaintiff engaged in alleged protected activity, Plaintiff cannot demonstrate that Ms. Von Kaenel possessed any knowledge of Plaintiff's alleged engagement in protected activity when Ms. Von Kaenel first

informed Plaintiff she was not permitted to return to work until she completed the training. (D.E. 8 at ¶ 23). Ms. Von Kaenel's lack of knowledge is the insurmountable death-knell to Plaintiff's FLSA retaliation claim, because it is well-settled that knowledge is absolutely necessary to establish causation. *See, e.g., Gibson v. Old Town Trolley Tours of Wash., D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (finding knowledge "absolutely necessary" to support causation). Plaintiff's First Amended Complaint simply demonstrates that Plaintiff cannot state an actionable FLSA retaliation claim, and, as a consequence, the Court must dismiss the FLSA retaliation claim by operation of Fed. R. Civ. P. 12(b)(6).

## VI. <u>CONCLUSION</u>

The outcome of this Motion to Dismiss is simple and straightforward, as Plaintiff's First Amended Complaint clearly alleges that Defendant made its decision to subject Plaintiff to an alleged adverse employment action <u>*before*</u> Plaintiff engaged in any form of alleged legally protected activity under the FLSA. (D.E. 8 at ¶¶ 15-27). The Court must assume this allegation is true. *See, e.g., Philips*, 572 F.3d at 180 (courts are instructed at accept as true all well-pleaded Complaint allegations).

Further, Plaintiff fails to allege she engaged in any activity remotely resembling activity that enjoys viable legal protection under the FLSA until <u>*after*</u> Ms. Von Kaenel communicated Defendant's position that Plaintiff could not return to work until she completed the online training. (D.E. 8 at ¶¶ 23-24); *see Minor*, 669 F.3d 428 (citing *Kasten,* 563 U.S. at 14 (2010); *Cohen*, 419 F. Supp. 3d at 840 and 851. Thus, Defendant lacked

knowledge of Plaintiff's engagement in FLSA protected activity when it took the adverse job action. (D.E. 8 at ¶¶ 23-24). Regarding causation, Courts follow the basic logical maxim that an employer cannot retaliate against an employee when the employer lacks knowledge of the employee's engagement in protected activity. *Gibson*; 160 F.3d at 182; *Dowe*, 145 F.3d at 657 (finding knowledge "absolutely necessary" to support causation); *Groth*, 2019 U.S. Dist. LEXIS 121031 at *35 ("Where an employer considers an adverse or disciplinary action before an employee engages in protected activity… temporal proximity between the protected activity and the action does not sufficed to establish causation."). Consequently, Plaintiff's First Amended Complaint cannot state a claim for FLSA retaliation as a matter of law and the claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted, this 22nd day of September, 2020.

s/ Philip A. Hinson
NC State Bar No. 42907
Lewis Brisbois Bisgaard & Smith LLP
521 East Morehead Street, Suite 250
Charlotte, North Carolina 28202
Phone: 704-557-9929
Fax: 704-557-9932
Email: Philip.Hinson@lewisbrisbois.com

**Attorneys for Defendant McGill Baptist Church, Inc.**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| Karen Hayes Phillip | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO: 1:20-CV-00540** |
| | ) | |
| MCGILL BAPTIST CHURCH, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing "MEMORANDUM IN SUPPORT OF DEFENDANT MCGILL BAPTIST CHURCH INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT" complies with the type-volume limitations of L.R. 7.3(d)(1) and contains 4192 words, excluding the portions of the Memorandum that L.R. 7.3(d)(1) instructs counsel not to count.

Respectfully submitted, this the 22nd day of September, 2020.

/s/ Philip A. Hinson
NC State Bar No. 42907
Lewis Brisbois Bisgaard & Smith LLP
521 East Morehead Street, Suite 250
Charlotte, North Carolina 28202
Phone: 704-557-9929
Fax: 704-557-9932
Email: Philip.Hinson@lewisbrisbois.com

**Attorneys for Defendant McGill Baptist Church, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing "MEMORANDUM IN SUPPORT OF DEFENDANT MCGILL BAPTIST CHURCH INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT" in the above-captioned proceeding was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification to the following:

>Jason S. Chestnut
>NC Bar #52066
>Philip J. Gibbons, Jr.
>NC Bar #50276
>Craig L. Leis
>NC Bar number #48582
>GIBBONS LEIS PLLC
>14045 Ballantyne Corporate Place, Ste 325
>Charlotte, North Carolina 28277
>Telephone: 704 612-0038
>jason@gibbonsleis.com
>phil@gibbonsleis.com
>craig@gibbonsleis.com

This the 22nd day of September, 2020.

>s/ Philip A. Hinson
>NC State Bar No. 42907
>Lewis Brisbois Bisgaard & Smith LLP
>521 East Morehead Street, Suite 250
>Charlotte, North Carolina 28202
>Phone: 704-557-9929
>Fax: 704-557-9932
>Email: Philip.Hinson@lewisbrisbois.com
>
>**Attorneys for Defendant McGill Baptist Church, Inc.**